IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS MICHAELS,                         *

    Plaintiff,                              *

      v.                                  *          Civil Action No. RDB-10-1998

CONTINENTAL REALITY                       *
CORPORATION,

    Defendant.                             *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Thomas Michaels ("Michaels" or "Plaintiff") alleges Defendant Continental

Reality Corporation ("CRC" or "Defendant") unlawfully discriminated and retaliated against him

on the basis of his alleged disability in violation of the Americans with Disabilities Act of 1990,

42 U.S.C. §§12101, *et seq.* (the "ADA"), and alleges intentional infliction of emotional distress

under Maryland common law.  The parties' submissions have been reviewed and no hearing is

necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendant

Continental Reality Corporation's Motion to Dismiss (ECF No. 9) is GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must

be accepted as true and those facts must be construed in the light most favorable to the plaintiff.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff Thomas Michaels was employed as a "Network Administrator" by CRC on

March 17, 2003.  Compl. ¶6, EFC No. 1.  It appears as though his duties included general

information technology support to CRC staff.  Michaels claims that he weighed in excess of 400

pounds when he was hired, and subsequently underwent laparoscopic Lap-Band surgery on April 28, 2008, which reduced his weight by about 100 pounds. *Id.* ¶¶7, 8. Plaintiff claims to suffer from clinically diagnosed super (morbid) obesity stemming from a variety of mental and emotional issues. *Id.* ¶7. However, while Plaintiff asserts that his alleged super (morbid) obesity is a disability, it is not clear whether he is also asserting that the emotional challenges from which he allegedly suffers constitute another separate disability. Michaels claims that despite the physical success of the laparoscopic Lap-Band surgery, he suffered increased mental and emotional distress because of side effects from the surgery.

On August 25, 2008 Michaels requested a meeting with members of CRC management, and met with his immediate supervisor, the Chief Executive Officer and Chief Operating Officer of CRC. *Id.* ¶10. At the meeting, Michaels presented the management with a document entitled "*Ways to Help Me Help Others*," in which he presented numerous requests to CRC management.[1] *Id.* ¶¶10, 11. Plaintiff does not describe most of the eleven requests he allegedly made in his Complaint.[2] *Id.* ¶¶10, 11. Michaels' Complaint only states that he allegedly made eleven requests, that if granted would improve his working conditions. *Id.* ¶¶10, 11. Plaintiff states in his Opposition to Defendant's Motion to Dismiss that he requested only simple accommodations, such as moving his office to a quieter location, reducing the number of direct "help desk" requests to him, providing him with a company cell phone so he could continue his duties remotely, and allowing him to do system maintenance on holidays without distractions from other employees. Opp'n. at 2, EFC No. 11. Additionally, Plaintiff does not allege

---

[1] Although Plaintiff states on page 3 of his complaint, ¶10, that "*Ways to Help Me Help Others*" is attached as Exhibit A, no exhibit was attached to the Complaint.

[2] The only request listed in the Complaint is "Sinai Bariatric Program relates to his request that CRC management intercede on Plaintiff's behalf to get him included in a particular hospital (Sinai) Bariatric Program (related to his disability)." Compl. ¶¶10, 11, n. 2.

anywhere in his Complaint that he informed CRC management that his requests on August 25, 2008 were related to any qualifying ADA disability.

On August 26, 2008, Plaintiff was presented with a proposed termination agreement by CRC, which he did not sign.  He alleges that CRC sent a company-wide email stating that he had resigned from his employment.  Plaintiff claims that because of his emotional state on that day, he was not in a rational frame of mind to make any decisions to resign.  Compl. ¶12.

On February 10, 2009, Michaels filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") against CRC.  Ex. 2, EFC No. 11-2.  In his EEOC Charge, Plaintiff claimed only that he was discriminated against on the basis of his disability.  *Id.* Nowhere in his EEOC Charge did Michaels mention retaliation.  *Id.* On May 21, 2010, Michaels received a Notice of Right to Sue Letter from EEOC and this lawsuit followed. Compl. ¶5.

<u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d

472, 474 (4th Cir. 1997).   However, this Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments."   *Nemet v. Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009).   Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."   *Twombly*, 550 U.S. at 555.   "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints."   *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).   To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).   The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement."   *Twombly*, 550 U.S. at 556.   Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 129 S. Ct. at 1949.

Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950.

ANALYSIS

In Counts One and Two of Plaintiff's Complaint, Michaels asserts discrimination based on his alleged disability and retaliation in violation of the ADA.  Compl. at ¶¶8, 9.  The ADA prohibits discrimination against a "qualified individual with a disability because of the disability of the individual."  42 U.S.C. §12112(a).  To proceed on a claim of failure to accommodate as a violation under the ADA, the plaintiff must make a *prima facie* case that he comes within the ADA's protected class, by showing he is disabled within the meaning of the ADA.  *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467 (4th Cir. 2002).  The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment."  42 U.S.C. §12102(1).  "The determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case."  *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (2nd Cir. 2001) (citations omitted).

Although CRC management was aware that Plaintiff was overweight, simply being overweight or obese has generally not been viewed as constituting a disability.  *Torcasio v. Murray,* 57 F.3d 1340, 1354 (4th Cir. 1995), *cert denied sub nom. Torcasio v. Angelone*, 116 S. Ct. 772 (1996) (reviewing case law finding obesity not a disability under the ADA).  According to the EEOC's Interpretive Guidance, only in "rare circumstances" may obesity rise to the level of "disability impairment."  29 C.F.R. App. §1630.2(j).  The ADA requires that such a disability "substantially limit one or more major life activity."  However, the Complaint shows that Michaels was able to carry out his employment responsibilities "remarkably well" pre and post-

5

surgery and does not allege a limitation in any other life activity.  *See.* Compl. ¶10.  Michaels argues that morbid obesity as distinguished from simply being overweight has been found to constitute a disability within the meaning of the ADA, particularly where, as here it stems from physiological causes.    In this regard, Michaels cites to *Cook v. State of Rhode Island, Department of Mental Health, Retardation and Hospitals*, 10 F.3d 17, 25 (1st Cir. 1993).   In *Cook*, the United States Court of Appeals for the First Circuit relied on medical evidence in holding that "morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system capable of causing adverse effects within the musculoskeletal, respiratory and cardiovascular systems."  *Id.* at 23. Michaels has not claimed that his morbid obesity is a *result* of a physiological or neurological disorder; rather he claims only that it is *related* to his variety of mental and emotional issues. Opp'n. at 1.

Nonetheless, even if it is found that Michaels' suffered from a recognized "disability" under the ADA, Plaintiff has still failed to provide adequate notice to CRC, exhaust all administrative remedies, and failed to include a retaliation claim in his EEOC Charge. Furthermore, Plaintiff has made summary and conclusory allegations of CRC's conduct and has not pled sufficient facts to prove the elements of the tort for intentional infliction of emotional distress ("IIED") in Count Three of his Complaint.

As a preliminary matter, Plaintiff referenced in his Complaint the eleven accommodation requests he allegedly made to CRC management at the 2008 meeting.  A description of these accommodations was apparently meant to be attached to the Complaint, but it appears to not have been filed.  In Plaintiff's Opposition Motion, he attaches the summary of the requests he made that were referenced in the Complaint.  Exh. 1, EFC No. 11-1.  While a plaintiff may not

supplement or cure his pleading defects in his Opposition Motion, where the document is referenced in Complaint, district courts have allowed it to be included. *See Perkins v. Silverstein*, 939 F.2d 463 n.6 ("As a general rule, a complaint may not be amended by briefs in opposition to a motion to dismiss. In the present case, however, the district court appears to have deemed the exhibits attached to the plaintiffs' opposition brief to be a part of the complaint, and considered those exhibits in reviewing the sufficiency of the complaint.") (internal citations omitted). Here, Michaels clearly references the attachment in his Complaint and appears to have only inadvertently left it off. Accordingly, this Court will deem the exhibit attached to Plaintiff's Opposition Brief to be a part of the Complaint.

I.      **Count One: Plaintiff's ADA Claim Fails to State a Claim upon which Relief May be Granted**

In Count One of his Complaint, Plaintiff asserts a violation of the ADA for a failure to accommodate on the part of CRC. Plaintiff's Complaint fails to plead facts to support the *prima facie* elements of such a failure to accommodate claim. The United States Court of Appeals for the Fourth Circuit has clearly set out the elements of an ADA failure to accommodate claim to include: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position…; and (4) that the employer refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 378 n.11 (4th Cir. 2001).

Plaintiff's failure to accommodate claim is based on his contention that his morbid obesity – and related severe emotional challenges – is a recognized qualifying ADA disability. Although it is not clear that this would fit the definition of "disability" under the statute, assuming he is part of that protected class, Plaintiff's claim nonetheless fails to meet the other requirements of this failure to accommodate claim. Assuming that Michaels had properly made

reasonable requests for accommodation, his claim would still fail to meet the second element requiring employer to be on notice of his disability.  The Complaint is devoid of any factual allegation that Michaels put CRC on notice that he was requesting accommodation because he suffered from a qualifying ADA disability.  The Complaint alleges that Plaintiff's super (morbid) obesity was "plainly visible" and "transparent."  Compl. ¶15. n. 5.  Michaels argues in his Opposition to Defendant's Motion to Dismiss, that he told his immediate supervisor and CRC's HR officer and Chief Operating Officer of his disabilities and the problems they were causing him but not once has Plaintiff made those factual allegations in his Complaint.  Opp'n at 8.  Michaels' conclusory legal assertion that his condition was plainly visible does not provide the required factual assertion required to support that Plaintiff put CRC on notice that he had a qualifying ADA disability.  *See Twombly*, 127 S.Ct. at 1964-1965. Michaels does not claim that his obesity limited him in any major life activity, including his job performance.  Indeed, in his Complaint he states "despite Plaintiff's pre and post-surgery medical handicap, he nonetheless carried out his employment responsibilities remarkably well, often staying overtime, including weekends to keep up with his workload."  Compl. ¶10.  If Plaintiff is also asserting that he suffered from a second disability of severe emotional challenges, he does not make allegations of notifying CRC management of this disability and unlike his other alleged disability, this one is hardly transparent.  Accordingly, Plaintiff cannot establish that he met the second prong of this claim – that CRC was on notice about Michaels' qualifying ADA disability at the time of his request.

**II.    Count One: Plaintiff's Claims of Emotional Disability Must be Dismissed Because Plaintiff Failed to Exhaust his Administrative Remedies**

If the Plaintiff is also alleging in Count One of the Complaint, discrimination against him by CRC under the ADA with respect to his severe emotional challenges, that claim is dismissed

as fatally defective because no such claim was asserted in the EEOC Charge.  Ex. 2, EFC No. 11-2.  Thus, Plaintiff did not exhaust his mandatory administrative remedies against CRC before filing suit.

The ADA requires that a plaintiff first file a charge of discrimination with the EEOC and exhaust the EEOC's administrative process in order to file a civil action arising under the statute. 42 U.S.C. §12117(a).  A court should dismiss such a discrimination lawsuit if the plaintiff has not exhausted required administrative remedies before bringing suit.  *Chacko v. Patuxent Institution*, 429 F.3d 505, 508-09 (4th Cir. 2005).  The dual purposes of this requirement are to put the charged party on notice of the claims against it and to allow the EEOC to attempt voluntary conciliation with the party of the allegations.  *Causey v. Balog,* 162 F.3d 795, 800 (4th Cir. 1998).

To fulfill this obligation, a plaintiff must set forth in his EEOC grievance all factual allegations that he anticipates raising.  *Chacko*, 429 F.3d at 509.  Because lawyers do not typically complete the administrative charges, courts tend to construe them liberally.  *Alvarado v. Bd. of Trs. Of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).  Nonetheless, a plaintiff fails to exhaust administrative remedies when failing to identify qualifying ADA disabilities when filing an EEOC Charge for failure to accommodate under the ADA.

On Plaintiff's EEOC Charge, he identifies his disability as obesity caused by depression. Ex. 2, EFC No. 11-2.  However, depression or other emotional issues were not identified as another separate disability.  *Id.*  During the course of the EEOC's investigation the only issue addressed by the EEOC and CRC was Michaels' claim of morbid obesity as a disability. There was no discussion about Michaels' emotional issues as a separate disability to be considered.  As the Fourth Circuit has held, "the factual allegations made in formal litigation must correspond to

those set forth in the administrative charge." *Chacko*, 429 F.3d at 509.  Thus a plaintiff's claim is typically barred if he charges alleged discrimination on one basis – such as retaliation for filing an internal complaint – and he introduces another basis in formal litigation – such as race or disability.  *Id.; see also Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999). Here, Michaels only described his morbid obesity as a qualifying ADA disability on his EEOC Charge, and the EEOC investigation focused solely on his morbid obesity.  Ex. 2, EFC No. 11-2. Plaintiff argues that if factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection is sufficient to exhaust administrative remedies.  *Chacko*, 429 F.3d at 509.  Further, Plaintiff argues that further investigation of the administrative charge would have uncovered the factual allegations set forth in the formal litigation and can be construed to exhaust administrative remedies.  *Id.* at 510.  The EEOC did not, however, investigate Michaels' claim of emotional issues as a second qualifying ADA disability.  The EEOC only investigated his claim of morbid obesity. Accordingly, because emotional issues exceed the scope of Michaels' EEOC Charge, he has failed to exhaust his administrative remedies with respect to his ADA discrimination claim for emotional issues as a qualifying ADA disability.  Accordingly, Count One of Plaintiff's Complaint is dismissed.

### III.   Count Two: Plaintiff's ADA Retaliation Claim Must be Dismissed Because Plaintiff Failed to Exhaust his Administrative Remedies

In Count Two Plaintiff asserts a claim of retaliation under the ADA.  Plaintiff did not include the claim of retaliation in his EEOC Charge and thus did not exhaust his administrative remedies with respect to that claim.  Ex. 2, EFC No. 11-2.

As discussed above, the ADA requires that in order to file a civil action arising under the statute, the plaintiff must first file a charge of discrimination with the EEOC and exhaust the agency's administrative process.  42 U.S.C. §§2000e-5(f)(1), 12117(a); *Chacko*, 429 F.3d at 508.

Without explicitly mentioning a retaliation claim in his EEOC Charge, merely describing the events that led to his termination is insufficient to have triggered a Commission investigation. Plaintiff's ADA retaliation claim must be dismissed on the ground that Plaintiff failed to exhaust his administrative remedies with respect to the retaliation claim because no mention of retaliation is made in the Charge.  *See* Exh. 2, EFC No. 11-2; *see also Teffera v. North Tex. Tollway Auth.*, 121 F. App'x 18, 21 (5th Cir. 2004) (employee failed to exhaust administrative remedy with respect to retaliation claim where no reference to retaliation made in EEOC Charge); *Atkins v. Southwestern Bell Tel. Co.*, 137 F. App'x 115 (10th Cir. 2005).[3]

## IV.   Count Two: Plaintiff Failed to Plead Facts to Support the *Prima Facie* Elements of a Retaliation Claim

In the alternative, even assuming Plaintiff had included his ADA retaliation claim in his EEOC Charge; Count Two would still be subject to dismissal because Plaintiff failed to plead facts necessary to support the *prima facie* elements of the retaliation claim.  To establish a *prima facie* case of retaliation under the ADA, a plaintiff must allege (1) that he has engaged in conduct protected by the ADA; (2) that he suffered an adverse action subsequent to engaging in protected conduct; and (3) that there was a causal link between the protected activity and the adverse action.  *Frelich v. Upper Chesapeake Health*, 313 F.3d 205, 216 (4th Cir. 2002).

Plaintiff has failed to plead facts to support the argument that his request for accommodations put CRC on notice that he had a qualifying ADA disability.  This non-specified accommodation request cannot form the basis for the first element, protected activity, of the retaliation claim.  *See Manson v. North Carolina A&T State University*, 2008 WL 2987071, at *8

---

[3]  While the Fourth Circuit has held that once a party has properly filed an EEOC charge of discrimination, he is not required to file a new charge concerning any subsequent retaliation that is related to claims made in the initial charge, *see Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009), Plaintiff in this case filed his charge of discrimination with the EEOC in February of 2009—nearly four months after the allegedly retaliatory acts he complains of took place.  Therefore, Plaintiff had ample opportunity to include allegations of retaliation in his EEOC charge.  *See Plunkett v. Potter*, 751 F. Supp. 2d 807, 810-12 (D. Md. 2010).

(M.D.N.C. July 31, 2008) (In assessing the plaintiff's ADA claim for a subsequent retaliatory adverse employment action, the court explained that although "a plaintiff need not establish that the conduct he opposed actually constituted an ADA violation, he must allege the predicate for a reasonable, good faith belief that the behavior he is opposing violated the ADA."). *Id.* The court held that the plaintiff could not state a claim for ADA retaliation in part because he "failed to identify with sufficient specificity the facts constituting his protected activity." *Id.* Additionally, plaintiff's complaint lacked sufficient facts "concerning his condition" so that defendant was not put on notice that he was protected under the ADA. *Id.* Therefore, the court concluded in *Manson* that there was no plausible predicate for a good faith belief by plaintiff that his employer had retaliated against him in violation of the ADA and should not survive a 12(b)(6) motion to dismiss.

As in *Manson*, there are insufficient factual allegations in Michaels' Complaint to support the existence of any protected ADA activity that could have formed the basis for CRC's alleged termination action. Similar to *Manson*, Michaels' Complaint does not allege that his requests put CRC on notice nor was there a clear description of his qualifying ADA disability. Therefore Plaintiff has not pled facts sufficient to support a *prima facie* claim of retaliation and Count Two is dismissed.

## V.    Count Three: Plaintiff's Claim for Intentional Infliction of Emotional Distress Must be Dismissed Because the Allegations Do No Establish Outrageous Conduct

Plaintiff claims in Count Three that CRC's conduct "was extreme and outrageous and went beyond all possible bounds of decency;" that it was "intentional and reckless;" and that as a result "Plaintiff suffered extreme emotional distress and mental anguish." Compl. ¶30. In Maryland, intentional infliction of emotional distress ("IIED") claims are "rarely viable" and are to be used "sparingly and only for opprobrious behavior that includes truly outrageous conduct."

*Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995) (internal quotations and citation omitted); *see also Farasat v. Paulikas*, 32 F. Supp.2d 244, 247 (D. Md. 1997).  Thus, to succeed on an emotional distress claim in Maryland, a plaintiff must meet a very high pleading standard.

To establish a claim of IIED, a plaintiff must allege facts that would support the conclusion that: (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) there as a causal connection between the defendant's wrongful conduct and plaintiff's emotional distress, and (4) plaintiff's emotional distress was severe.  *Caldor v. Bowden*, 330 Md. 632, 641-42 (1993) (quoting *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 615 (Md. 1977)).  CRC contends that Michaels has not alleged extreme and outrageous conduct.  To prove that conduct is outrageous, a plaintiff must show that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, *380* A.2d at 614 (quoting Restatement (Second) of Torts §46 comment d (1965)). Michaels' allegations of outrageous conduct are that employees engaged in callous, heartless conduct towards him and that his immediate supervisor repeatedly mocked, berated, and ignored him.  Compl. ¶10. Though the alleged conduct may have upset Michaels, it does not constitute conduct that goes "beyond all possible bounds of decency."   Furthermore, this Court has previously held that poor behavior at the workplace rarely rises to the level of extreme and outrageous conduct.  *See Arbabi v. Fred Meyers, Inc.*, 205 F. Supp.2d 462, 466 (D. Md. 2001) ("workplace harassment…almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law").

Accordingly, Michaels' allegations do not sufficiently assert a claim for intentional infliction of emotional distress.  Therefore, Count Three is dismissed.

<u>CONCLUSION</u>

For the reasons stated above, Defendant CRC's Motion to Dismiss (ECF No. 9) is GRANTED.

A separate Order follows.

Dated: September 26, 2011                                    /s/_____
                                                            Richard D. Bennett
                                                            United States District Judge